Counsel of Record:
Kelly L. Gibson
Jennifer Chun Barry
David W. Snyder

Attorneys for Plaintiff
U.S. SECURITIES AND EXCHANGE COMMISSION
One Penn Center
1617 JFK Blvd., Suite 520
Philadelphia, PA 19103
Telephone:  (215) 597-3100
Facsimile:  (215) 597-2740

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **U.S. SECURITIES AND EXCHANGE COMMISSION,** | **Case No.** |
| **Plaintiff,** | |
| **v.** | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| **EVAN R. KITA, DANIEL PEREZ, RICHARD YU, and CHIANG YU,** | |
| **Defendants.** | **JURY TRIAL DEMANDED** |

Plaintiff Securities and Exchange Commission ("Commission") alleges as follows against

Defendants Evan R. Kita ("Kita"), Daniel Perez ("Perez"), Richard Yu ("R. Yu"), and Chiang

Yu ("C. Yu"), whose last known addresses are set forth below:

       Evan R. Kita
       71 Letchworth Avenue
       Apartment 5
       Yardley, PA   19067

Daniel Perez
157 S. Delaware Avenue
Apartment 5
Yardley, PA   19067

Richard Yu
135 Coburn Road
Pennington, NJ   08534

Chiang Yu
135 Coburn Road
Pennington, NJ   08534

## SUMMARY OF THE ACTION

1.      This matter involves unlawful insider trading by Defendant Kita, a former employee of Celator Pharmaceuticals, Inc. ("Celator"), who tipped his friends Defendants Perez and R. Yu to trade Celator securities ahead of two market-moving announcements by the company in 2016.  In addition to trading in his own account, R. Yu passed Kita's tips to his father, Defendant C. Yu, who also engaged in illegal trading.

2.      In early March 2016, while employed as an accountant at Celator, Kita tipped Defendants Perez and R. Yu with material, nonpublic information about Celator's impending announcement that its cancer drug Vyxeos had demonstrated positive results in a Phase 3 clinical trial.

3.      In early May 2016, shortly after he had left Celator, Kita obtained advance notice of Celator's impending acquisition from two close friends who worked at the company. Although Kita knew that the information was nonpublic and had been shared with him in confidence, he again tipped Perez and R. Yu so that they could trade in advance of the May 31, 2016 announcement that Jazz Pharmaceuticals, Plc ("Jazz") had agreed to buy Celator for $30.25 per share through a tender offer.

2

4.      In an attempt to avoid detection, Kita, who had arranged to receive a share of his tippees' trading profits, communicated the illegal tips to Perez and R. Yu through a smartphone application that uses the Internet to send encrypted messages.

5.      Based on Kita's tips, Perez and R. Yu purchased Celator stock ahead of the two market-moving announcements and generated illicit trading profits of approximately $41,774 and $21,934, respectively.  As each of them had arranged with Kita, Perez and R. Yu made cash payments to Kita in exchange for the tips.  R. Yu also passed Kita's tips to his father C. Yu who joined in the fraudulent scheme and generated over $347,327 in illegal profits by trading Celator in advance of both public announcements.

6.      The Defendants' illegal tipping and trading harmed the investing public because the Defendants unfairly profited from Kita's access to material nonpublic information.

7.      By engaging in the conduct described in this Complaint, Defendants Kita, Perez, R. Yu, and C. Yu violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and Section 14(e) of the Exchange Act [15 U.S.C. § 78n(e)] and Rule 14e-3 thereunder [17 C.F.R. § 240.14e-3].

## JURISDICTION AND VENUE

8.      The Commission brings this action pursuant to Sections 21(d) and 21A of the Exchange Act [15 U.S.C. §§ 78u(d) and 78u-1], to enjoin the acts, practices, and courses of business alleged in this Complaint, and to obtain disgorgement, prejudgment interest, civil money penalties and such other and further relief as the Court may deem just and appropriate.

9.      This Court has jurisdiction over this action pursuant to Sections 21(d), 21A, and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u-1, and 78aa].

10.     Venue in this district is proper pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa].  Kita worked at Celator's offices in Ewing, New Jersey, at all relevant times R. Yu and C. Yu lived in Pennington, New Jersey, and certain of the acts, practices, transactions, and courses of business constituting the violations alleged herein occurred within the District of New Jersey.

## DEFENDANTS

11.     **Evan R. Kita**, age 26, resides in Yardley, Pennsylvania.  Kita is a CPA licensed in the state of Pennsylvania.  From June 2015 to approximately April 8, 2016, Kita was a senior accountant at Celator, and his duties included reconciling the company's books and records.  From approximately April 8, 2016, to April 21, 2016, while employed at another pharmaceutical company as a senior financial analyst, Kita continued to work at Celator as an independent contractor on nights and weekends in the company's accounting department.

12.     **Daniel Perez**, age 28, resides in Yardley, Pennsylvania.  Perez is a business analyst at a software company headquartered in Bridgewater, New Jersey.  Perez is Kita's next-door neighbor and is close friends with Kita.

13.      **Richard Yu**, age 26, resides in Pennington, New Jersey with his parents.  R. Yu is a service engineer at a laboratory equipment manufacturer located in Pennington, New Jersey.  R. Yu and Kita are close friends.

14.     **Chiang Yu**, age 55, resides in Pennington, New Jersey.  C. Yu is a senior research scientist at a pharmaceutical company in New Jersey.  C. Yu is R. Yu's father.

## RELEVANT ENTITIES

15.     Prior to being acquired by Jazz, **Celator** was a publicly-traded biopharmaceutical company headquartered in Ewing, New Jersey, and was listed on the NASDAQ stock exchange.

Jazz purchased Celator through a tender offer, and Jazz now operates Celator as a wholly-owned subsidiary.

16.     **Jazz** is a publicly traded company headquartered in Dublin, Ireland, and is listed on the NASDAQ exchange.  Jazz purchased Celator through a tender offer, and Jazz now operates Celator as a wholly-owned subsidiary.

**FACTS**

I.      **THE MARCH 14, 2016 CELATOR DRUG ANNOUNCEMENT**

A.      **The Phase 3 Clinical Trial of Celator's Vyxeos**

17.     In December 2012, Celator began its Phase 3 clinical trial for Vyxeos, a drug designed to treat myeloid leukemia.

18.     On February 16, 2016, Celator issued a press release forecasting that it expected to announce the overall survival results from the Phase 3 clinical trial later that quarter.

19.     On March 9, 2016, Celator's board of directors, executives, and management met to review the Vyxeos Phase 3 clinical trial results and discussed communicating those results to the public.

20.     On March 14, 2016, after the market closed, Celator issued a press release announcing that the results of its Phase 3 clinical trial of Vyxeos were positive and shared this news with its employees on a conference call.

21.     The next day, on March 15, 2016, Celator's stock price rose sharply and closed at $8.94, a 432% increase over the previous day's closing price of $1.68.  The volume of trading in Celator stock also rose after the announcement, from approximately 8.6 million shares on March 14, 2016, to approximately 39.4 million shares on March 15, 2016.

**B.**     **Kita Learned About the Trial Results and Tipped that Information to Perez**

22.     On March 10, 2016, Celator's CFO summoned Kita and another Celator employee to a meeting.  During that meeting, the CFO communicated that he had reason to believe the results of the Phase 3 clinical trial were positive and that the results would be announced early the following week.  The CFO asked Kita to calculate a financial scenario reflecting the positive results.

23.     As an employee at Celator, Kita certified that he would follow Celator's policies regarding insider trading and safeguarding confidential information.  These policies prohibit Celator employees from disclosing Celator's confidential information, including clinical trial results and proposed mergers and tender offers.

24.     Despite Kita's agreement to follow Celator's policies, on the evening of March 10, 2016, Kita told his friend Perez about his meeting with the Celator CFO and that Celator was about to announce positive clinical trial results.

25.     Kita and Perez decided that Perez would purchase Celator stock on behalf of himself and Kita.  Perez also agreed to share the profits with Kita.

26.     In order to avoid detection, Kita and Perez agreed to communicate either in person or using the encrypted smartphone application.

27.     The next day, March 11, 2016, Perez purchased 5,520 shares of Celator stock at an average price of approximately $1.52 per share.  As discussed above, Celator announced the positive results of its clinical trial to the public after market close on March 14, 2016 and the company's stock price jumped the following day.  Based on the closing price of Celator stock on March 15, 2016, Perez generated profits of approximately $40,967, a return of approximately 489 percent in only four days.

C.     **Kita Tipped R. Yu About the Trial Results, and R. Yu Further Tipped This Information to His Father, C. Yu**

28.     On March 11, 2016, Kita sent his friend R. Yu a text message indicating that he had some information for him.

29.     Kita and R. Yu met the following day, Saturday, March 12, 2016, at R. Yu's house.  Kita told R. Yu about his March 10, 2016 meeting with the Celator CFO, the company's positive clinical trial results, and that the announcement of those results would be made early the following week.

30.     Kita also told R. Yu that the information was confidential and that he should not share it with anyone.

31.     Kita asked R. Yu to buy Celator on his behalf.  R. Yu agreed to do so and to share the profits with Kita.

32.     When Kita met with R. Yu on March 12, 2016, R. Yu's father, C. Yu, was also at the house.

33.     After meeting with Kita, R. Yu told C. Yu that Kita worked at Celator, and that R. Yu wanted to buy Celator stock because there was good news regarding the company's clinical research trial.

34.     Later that day, R. Yu entered an order to purchase 2,446 shares of Celator stock at $1.54 per share, which would not be executed until the market opened on Monday, March 14, 2016.

35.     R. Yu asked his father to transfer money into his brokerage account to cover his order to purchase Celator stock.  That same day, March 12, 2016, C. Yu transferred $4,000 into R. Yu's brokerage account.

36.     On Monday, March 14, 2016, R. Yu's order to purchase Celator stock was executed.  Shortly after the market opened, between approximately 9:32 a.m. and 9:57 a.m., C. Yu bought at total of 33,500 shares of Celator stock in three separate brokerage accounts.  This was the first time C. Yu ever bought Celator securities.

37.     As discussed above, Celator announced positive clinical trial results for Vyxeos after market close on March 14, 2016, and the company's stock price jumped on March 15, 2016.  Based on the closing price of Celator stock on March 15, R. Yu and C. Yu generated illicit profits of approximately $18,093 and $245,475, a return of approximately 479 percent and 454 percent, respectively.

38.     On March 23, 2016, a representative from one of C. Yu's brokerage firms called him to ask about his purchase of Celator stock.  When the representative asked C. Yu whether he knew anyone who worked at Celator, C. Yu repeatedly denied knowing anyone at the company.  Further, when the representative asked why he purchased Celator stock, C. Yu gave multiple reasons but failed to mention his son's tip that the company had received good news about the results of a drug trial.

## II.     THE CELATOR ACQUISITION

### A.     Jazz's Efforts to Acquire Celator

39.     In January 2015, Jazz expressed an interest in combining with Celator, and the two companies negotiated a possible business combination through May 2015.  Jazz, however, decided that it wanted to review the results of Celator's Vyxeos trial before proceeding with the transaction.

40.     After the March 14, 2016 public announcement of the Vyxeos trial results, in addition to Jazz, Celator received several unsolicited inquiries about possible mergers or partnerships.

41.     On April 4, 2016, a representative from Jazz contacted Celator to congratulate it on the positive results and to express Jazz's desire to re-engage in discussions regarding a strategic transaction with Celator.  Later that month, Celator and Jazz met with Celator's legal advisors and Jazz conducted due diligence on Celator.  On April 28, 2016, Jazz delivered a written, non-binding indication of interest to Celator to acquire the company for $20 per share in cash, subject to the completion of due diligence.

42.     On May 2, 2016, Celator, through its financial adviser, informed all interested parties that the deadline to submit proposals for an acquisition of, or partnership with, Celator was May 20, 2016.  On May 20, 2016, Celator received six non-binding indications of interest, including one from Jazz.  Each of the acquisition proposals was accompanied by a mark-up of Celator's proposed form of merger agreement.

43.     On May 22, 2016, Celator's board met to discuss its options.  Celator conducted two more rounds of bidding, and, on May 27, 2016, the board selected Jazz as the winning bidder.  Later that day, Celator and Jazz executed a merger agreement.  None of this information was public.

44.     Before market open on May 31, 2016, Celator and Jazz issued a joint press release announcing the merger agreement and imminent commencement of a tender offer by Jazz to acquire all of Celator's outstanding shares at $30.25 per share in cash.  When trading commenced, Celator's stock rose sharply and it later closed at $30.08 per share, which was approximately 72% above the prior trading day's closing price of $17.53.  The volume of trading

in Celator stock rose from approximately 1.1 million shares on the prior trading day, to approximately 38.3 million shares on the date of the announcement.

**B.      Kita Learned About the Celator Acquisition From  two Friends at Celator**

45.      In early April 2016, Kita resigned his position as a senior accountant at Celator and began a new job at another pharmaceutical company.  Kita continued to work as an independent contractor at Celator from approximately April 8 to April 21, 2016.

46.      After leaving Celator, Kita continued to stay in close contact with two Celator employees with whom he had formed close friendships while working at the company.  Kita maintained a relationship of trust or confidence with each of these individuals.  Kita discussed work-related and personal matters with Friend 1 and Friend 2, and Kita also discussed relationship and medical issues with Friend 2.

47.      On May 9, 2016, Kita texted one of these friends ("Friend 1") asking how things were going at Celator, and Friend 1 responded:  "Good. Jazz back again very serious."

48.      On May 17, 2016, another of Kita's friends who worked at Celator ("Friend 2") sent a text message to Kita that read:  "Got some juice from [Friend 1] today."  Friend 2's follow up text read:  "Bids to buy out are due by fri. [Friend 1] told me not to say anything but you are cool…Also figured you may know."

49.      On May 19, 2016, Friend 2 texted Kita communicating that May 20 was the deadline for potential acquirers to submit a bid to buy Celator.

**C.      Kita Tipped Perez About the Celator Acquisition**

50.      On May 20, 2016, Kita sent Perez a message via the encrypted smartphone application that read:

> Listen
> I have a little bird

And I am told today is a deadline for submitting bids to buy the company
Get your ducks in line on your end, idk [I don't know] when it's gonna be
announced but it's gonna pop again[.]

51.     That same day, May 20, 2016, Perez purchased 60 shares of Celator stock at

$16.63 per share.

52.     As discussed above, less than two weeks later, on the morning of May 31, 2016,

Celator and Jazz announced that Jazz would acquire Celator for $30.25 per share and the price of

Celator stock rose dramatically that day.  Based on the closing price of Celator's stock on May

31, 2016, Perez generated an illicit profit of approximately $807 on his May 20 purchase of

Celator stock.

53.     As per their agreement to share the insider trading profits that Perez generated,

Perez made cash payments of at least $7,000 to Kita.

**D.     Kita Tipped R. Yu About the Celator Acquisition, and R. Yu Further Tipped
         this Information to His Father, C. Yu**

54.     On the evening of May 19, 2016, shortly after learning from Friend 2 that bids to

acquire Celator were due the next day, Kita sent a message to R. Yu via the encrypted

smartphone application that read:  "I was told tomorrow is the deadline for the companies to

submit bids to buy the company.  It's gonna pop again[.]"

55.     Later on the evening of May 19, 2016, Kita further explained the valuable nature

of the information to R. Yu via the encrypted smartphone application:

If there is an agreement made for someone to buy the company it could easily
double again. They typically buy @ current market value + 70-100% premium
and the shares we have will be worth the buy price offered.  So I think maybe
Monday or next week it could be announced in which case it could be like $24-36
or something like that
Get ducks in a row on your end[.]

56.     On May 19, 2016, shortly after receiving information about the acquisition from Kita, R. Yu texted with his father, C. Yu.

57.     Approximately two hours later, just after midnight on May 20, 2016, C. Yu placed a market order to buy 2,000 shares of Celator stock in one of his brokerage accounts.  C. Yu's purchase order was filled at a price of $16.70 per share when the market opened on May 20.

58.     On May 20, 2016, at approximately 8:44 a.m., Kita again used the encrypted messaging application to prompt R. Yu to buy more Celator stock.  Kita ended his message to R. Yu by saying, "I just don't want to miss it[.]"

59.     Later in the morning of May 20, 2016, C. Yu purchased additional shares of Celator stock in brokerage accounts at three different brokerage firms.  In connection with a failed attempt to purchase shares through one of the three brokerage firms, C. Yu called this brokerage firm and stated that he was having technical issues placing his trade through the firm's smartphone application.  When the brokerage representative advised that it would be necessary for another representative to assist him, C. Yu replied, "Please, quickly."  When the second brokerage representative offered to place C. Yu's Celator trade and then resolve the issues with the application, C. Yu replied, "Please, let's just order."  Including the 2,000 shares that he purchased at market open, C. Yu spent approximately $126,756 to purchase a total of 7,600 shares of Celator stock on May 20, 2016.

60.     On May 27, 2016, R. Yu purchased 300 shares of Celator stock at $17.28 per share.

61.      As discussed above, the price of Celator stock rose sharply following the announcement of the company's acquisition on the morning of May 31, 2016.  Based on the

closing price of Celator stock on May 31, 2016, R. Yu generated illicit profits of approximately

$3,841 on his May 27 purchase of Celator stock.  C. Yu's ill-gotten profit on the 7,600 shares of

Celator stock he purchased on May 20 was approximately $101,852.

62.     As per R. Yu's agreement to share his insider trading profits with Kita, R. Yu

made cash payments of at least $2,000 to Kita.

## FIRST CLAIM FOR RELIEF

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder

63.     The Commission re-alleges and incorporates by reference each and every

allegation in paragraphs 1-62 inclusive, as if they were fully set forth herein.

64.     Information about the Vyxeos Phase 3 trial results and the impending acquisition

of Celator were maintained as confidential by Celator, which had policies to protect its

confidential information.  Kita learned the information about the trial results as a result of his

employment at Celator.  As a Celator employee, Kita owed a fiduciary or a similar duty of trust

or confidence to Celator and its shareholders to safeguard and not disclose to others confidential

information that he learned through his employment at the company, including clinical trial

results, which were material and nonpublic.  In breach of his duty, Kita knowingly or recklessly

disclosed material nonpublic information regarding the trial results to others in advance of the

public announcement with the expectation that they would trade on the information.  Kita

communicated material nonpublic information regarding the trial results to others in exchange

for personal benefits or with the expectation of receiving a benefit, including sharing profits.

65.     With respect to the information Kita learned from Friend 1 and Friend 2 regarding

the impending acquisition of Celator, Kita owed a duty of trust or confidence to each of them.

Based on their history, pattern, or practice of sharing confidences with Kita, and vice versa, Kita

knew or reasonably should have known that Friend 1 and Friend 2 expected him to keep

13

confidential the information they shared with him regarding the impending acquisition of Celator.  In breach of his duty of trust or confidence owed to Friend 1 and Friend 2, Kita knowingly or recklessly disclosed the information regarding the tender offer to others in advance of the public announcement with the expectation that they would trade on the information.  Kita communicated material nonpublic information regarding the tender offer to others in exchange for personal benefits or with the expectation of receiving a benefit, including sharing profits.

66.     Perez, R. Yu, and C. Yu traded and/or tipped others to trade on the basis of material nonpublic information despite knowing, or being reckless in not knowing, that the information was material and nonpublic.  Perez, R. Yu, and C. Yu knew, were reckless in not knowing, should have known, or consciously avoided knowing that the information was disclosed or misappropriated in breach of a fiduciary duty or obligation arising from a similar duty of trust or confidence.

67.     By engaging in the conduct described above, Defendants Kita, Perez, R. Yu, and C. Yu, in connection with the purchase or sale of securities, directly or indirectly, by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, with scienter:

   a.   employed devices, schemes, or artifices to defraud;

   b.   made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

   c.   engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

68.     By engaging in the foregoing conduct, Defendants violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## SECOND CLAIM FOR RELIEF

### Violations of Section 14(e) of the Exchange Act and Rule 14e-3 Thereunder

69.     The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1-68 inclusive, as if they were fully set forth herein.

70.     Jazz pursued its acquisition of Celator by entering in to an agreement whereby it would acquire Celator's outstanding shares through a tender offer.

71.     By May 20, 2016, the date of the first illegal trade in Celator securities resulting from Kita's disclosures concerning the impending acquisition of Celator, Jazz had taken substantial steps to complete its tender offer to acquire Celator.  Specifically, the companies had retained financial and legal advisers, were conducting due diligence, were negotiating the terms of the merger agreement, and were negotiating the price of the transaction.

72.     By engaging in the conduct described above, Defendants Kita and R. Yu communicated material nonpublic information relating to the tender offer under circumstances in which it was reasonably foreseeable that the communication was likely to result in the purchase or sale of the securities sought or to be sought by such tender offer.

73.     At the time Defendants Perez, R. Yu, and C. Yu purchased Celator securities or caused Celator securities to be purchased as described herein, they were in possession of material, nonpublic information regarding the tender offer that they knew or had reason to know was nonpublic and acquired directly or indirectly from the offering person, the issuer of the securities sought or to be sought by such tender offer, or an officer, director, partner, or employee of any other person acting on behalf of the offering person or issuer.

15

74.     By reason of the foregoing, Defendants violated and, unless enjoined, will continue to violate, Section 14(e) of the Exchange Act [15 U.S.C. § 78n(e)] and Rule 14e-3 thereunder [17 C.F.R. § 240.14e-3].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court enter a final judgment:

## I.

Permanently restraining and enjoining Defendants Kita, Perez, R. Yu, and C. Yu from, directly or indirectly, violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5] and from violating Section 14(e) of the Exchange Act [15 U.S.C. § 78n(e)] and Rule 14e-3 thereunder [17 C.F.R. § 240.14e-3];

## II.

Ordering Defendants Kita, Perez, R. Yu, and C. Yu to disgorge the unlawful trading profits derived from the activities set forth in this Complaint, together with prejudgment interest;

## III.

Ordering Defendants to pay civil penalties up to three times the profits made pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-l]; and

**IV.**

Granting such other and further relief as this Court may determine to be just and appropriate.

Respectfully submitted,

s/ Jennifer Chun Barry
Kelly L. Gibson
Jennifer Chun Barry
David W. Snyder

U.S. SECURITIES AND EXCHANGE
COMMISSION
1617 JFK Boulevard, Suite 520
Philadelphia, PA  19103
(215) 597-3100
barryj@sec.gov

Joseph G. Sansone
U.S. SECURITIES AND EXCHANGE
COMMISSION
200 Vesey Street, Suite 400
New York, New York   10281
(212) 336-1100

Attorneys for Plaintiff

Dated:  August 31, 2017

## <u>LOCAL CIVIL RULE 11.2 CERTIFICATION</u>

Pursuant to Local Civil Rule 11.2, I certify that the matter in controversy alleged in the foregoing Complaint is not the subject of any other civil action pending in any court, or of any pending arbitration or administrative proceedings.


Dated:  August 31, 2017                   s/ Jennifer Chun Barry_____
                                          Kelly L. Gibson
                                          Jennifer Chun Barry
                                          David W. Snyder

                                           Attorneys for Plaintiff
                                          U.S. SECURITIES AND EXCHANGE
                                          COMMISSION
                                          1617 JFK Boulevard, Suite 520
                                          Philadelphia, PA  19103
                                          Telephone:  (215) 597-3100
                                          barryj@sec.gov

## DESIGNATION PURSUANT TO LOCAL CIVIL RULE 101.l(f)

Pursuant to Local Civil Rule 101.1(f), because the Securities and Exchange Commission ("Commission") does not have an office in this district, the United States Attorney for the District of New Jersey is hereby designated as an eligible alternative to the Commission to receive service of all notices or papers in the action at the following address:

> David Dauenheimer
> Deputy Chief, Civil Division
> Assistant U.S. Attorney
> 970 Broad Street
> Newark, New Jersey 07102
> Email:  david.dauenheimer@usdoj.gov
> (973) 645-2700

Dated:  August 31, 2017         s/ Jennifer Chun Barry_____
                                Kelly L. Gibson
                                Jennifer Chun Barry
                                David W. Snyder

                                Attorneys for Plaintiff
                                U.S. SECURITIES AND EXCHANGE
                                COMMISSION
                                1617 JFK Boulevard, Suite 520
                                Philadelphia, PA  19103
                                Telephone:  (215) 597-3100
                                barryj@sec.gov